**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: | CASE NO. 17-11015 |
| FLYGLO, LLC | CHAPTER 7 |
| DEBTOR | SECTION B |

### POST-TRIAL MEMORANDUM

**NOW INTO COURT**, through undersigned counsel, comes Calvin C. Fayard, III ("Mr. Fayard"), who respectfully submits this post-trial memorandum ("Memorandum") in support of his opposition to the *Motion and Incorporated Memorandum for Order Under 11 U.S.C. §105(A) Holding Debtor and its Principal in Contempt and Under 11 U.S.C. §503 for Allowance of Administrative Expense Claim* [Doc. 158] (the "Contempt Motion").

### Summary of Argument

Mr. Fayard should not be held responsible for the inability of the Debtor to comply with all terms of the *Order Approving Agreement Relating to Motion to Lift Automatic Stay* [Doc. 79] (the "Agreed Order") for the following reasons:

- Mr. Fayard did not negotiate the terms of the Agreed Order and was not aware of what provisions in the Agreed Order were of most importance to Alandia;

- The Agreed Order did not direct or require certain conduct of Mr. Fayard *personally* and was not directed to Mr. Fayard *individually*; and,

- The Debtor made every effort to comply with the terms of the Agreed Order and did in fact comply with most of the requirements under the Agreed Order.

Alternatively, even if Mr. Fayard is found in contempt, Alandia did not suffer any damages as a result of the inability of the Debtor to comply with the Agreed Order as all damages complained of by Alandia were damages that arose *prior* to the Chapter 11 bankruptcy filing. If

1

Alandia had successfully lifted the automatic stay in May of 2017 as it originally sought to do, it would have suffered the exact same damages it is now erroneously claiming Mr. Fayard should be responsible to pay as the Debtor was unable to do so.

## Background

This case was commenced voluntarily by FlyGlo, LLC ("FlyGlo" or "Debtor") on April 23, 2017 under Chapter 11 of the United States Bankruptcy Code (the "Petition Date"). A *Motion of the Office of the United States Trustee to Convert Case to Chapter 7 or, in the Alternative, to Appoint a Chapter 11 Trustee* [Doc. 152] was filed and granted by this Court by Order entered on September 1, 2017 [Doc. 190]. Wells Fargo Bank Northwest, National Association, not in its individual capacity but solely as Owner Trustee for the benefit of Alandia Air Ab ("Alandia") filed a *Motion and Incorporated Memorandum to Lift Automatic Stay* [Doc. 29] (the "Stay Motion") on April 28, 2017. An *Order Approving Agreement Relating to Motion to Lift Automatic Stay* [Doc. 79] (the "Agreed Order") was subsequently entered on May 24, 2017 by Alandia and FlyGlo. Although Mr. Fayard is not personally a party to the Agreed Order, alleged violations of the Agreed Order are the supposed basis of the Contempt Motion against Mr. Fayard. A hearing on the Contempt Motion was conducted by this Court on September 14, 2017.

## Facts

**I.     Mr. Fayard did not negotiate the terms of the Agreed Order.**

Contrary to the assertions made by Alandia in its *Post-Trial Memorandum in Support of Motion for Order Under 11 U.S.C. §105(A) Holding Debtor and its Principal in Contempt* [Doc. 232] (the "Alandia Memorandum"), Mr. Fayard did not personally negotiate the terms of the Agreed Order with Alandia or a representative of Alandia. As Mr. Fayard repeatedly testified to during the hearing on the Contempt Motion, the Debtor negotiated the terms of the Agreed Order

through its counsel, *and not through Mr. Fayard*[1]. Although Mr. Fayard signed the Agreed Order on behalf of the Debtor – not in an individual capacity – he was not involved in the negotiations of the terms of the Agreed Order; that was done by counsel for the Debtor[2]. Mr. Fayard never had any discussions or meetings with Jorgen Gustafsson ("Mr. Gustafsson") concerning the terms of the Agreed Order and cannot be presumed to know which conditions, if any, of the Agreed Order were of most importance to Mr. Gustafsson[3]. Mr. Gustafsson corroborated Mr. Fayard's testimony by testifying that the only meeting he had with Mr. Fayard occurred right after the chapter 11 filing at the JetStream offices in Miami, Florida and that no settlement, term sheet or any type of verbal or written agreement came out of the meeting[4]. In fact, when pressed, Mr. Gustafsson testified that he believed discussions concerning the terms of the Agreed Order after the meeting in Miami, Florida took place between the counsels and he did not personally know if Mr. Fayard was involved in the negotiations of the Agreed Order[5].

## II. The Debtor Complied with the Post-Petition Terms of the Agreed Order

The Agreed Order required the Debtor to notify Alandia of its intent to reject any of the leases by July 15, 2017. As both Mr. Gustafsson and Mr. Fayard testified, after Corporate Flight Management ("CFM") notified the Debtor in mid to late June that it would not be able to fully staff the flights, Mr. Fayard notified Mr. Gustafsson via email on June 30, 2017 that it was unable to continue to properly staff the flights at the schedule it had been operating and was returning one of the aircrafts[6].

When the Debtor became aware that CFM could not provide the necessary personnel to

---

[1] Tr. 104:17-18; 104:25; 160:7-17; 161:2-21.
[2] Tr. 104:15-18; 105:2-12.
[3] Tr. 106:2-12.
[4] Tr. 82:1-25; 83:1-18.
[5] Tr. 83:11-18.
[6] Tr. 122:4-9; 123:1-25; 27:10-24; 163:6-9.

3

operate the remaining two aircrafts, it notified Mr. Gustafsson on July 11, 2017 that it would be rejecting the remaining two leases as of July 15, 2017[7]. Thus, the Debtor complied with the deadline to notify Alandia of its intent with respect to the rejection of the aircraft leases.

The Debtor also made all post-petition payments due under the terms of the aircraft leases as required by the Agreed Order with the exception of the payments owed to General Electric ("GE") for June and July, as those were subject to a billing dispute[8]. There was a billing discrepancy with GE because the Debtor was being billed for an engine that had been sent by CFM for repair and the hours it said were being flown were not being flown[9].

The only condition the Debtor did not and indeed could not comply with concerned the redelivery of the aircrafts to Alandia subject to the return conditions of the lease agreements[10]. First, the Debtor, having ceased operations on July 15, 2017, had no source of revenue with which it could comply with return conditions[11]. Further, and as counsel for the Debtor testified, the Debtor was also in default under the terms of the DIP loan upon its cessation of business operations and could not utilize the minimal funds remaining on the DIP loan to comply with the surrender conditions[12]. Finally, as the outlandish damage demands made by Alandia in this case demonstrate, even if the Debtor could have borrowed all of the remaining DIP loan funds that had been available to it prior to default, the Debtor would still have been woefully short of funds to pay for the repairs, painting, inspections and the myriad of other expenses required to comply with all of the return conditions. The Debtor had flat out run out of money and it was impossible for it

---

[7] Tr. 122:20-25; 163:10-18; 33:12-24.
[8] Tr. 169:1-25; 170:1-25; 100:13-14.
[9] Tr. 159:2-13.
[10] Alandia and the Debtor modified one provision of the surrender/redelivery conditions of the lease agreements to allow the Debtor to surrender the aircraft in New Orleans, Louisiana rather than Bangor, Maine.
[11] Tr. 153:4-11.
[12] Tr. 238:1-4.

to pay for the obligations imposed by the return conditions[13].

Secondly, the Aircraft Maintenance Service and Charter Agreement ("Charter Agreement", Fayard 2) between CFM and the Debtor obligated CFM to provide crewing, flight, maintenance and operational control of the aircrafts it subleased from the Debtor with consent of Alandia[14]. As Mr. Fayard testified, the Debtor could not do any maintenance and would necessarily have involved CFM in any transactions to return the aircrafts pursuant to the surrender provisions[15]. The Debtor never operated the aircrafts and any surrender conditions involving maintenance would have been the responsibility of CFM[16].

Every effort was made by the Debtor to comply with as many of the return conditions as it could, such as ensuring the logbooks were returned with the aircrafts[17], but it was unable to comply with those conditions in the leases which would require an expenditure of a large amount of funds since the Debtor had no funds available when the aircrafts were returned[18].

## III. Damages Claimed by Alandia Are Not Directly Related to Failure to Meet All Terms of Agreed Order.

The damages claimed by Alandia for the Debtor's failure to meet all of the return conditions are primarily pre-petition obligations that would be treated as general unsecured claims whether the planes had been returned immediately upon the filing of the chapter 11 case or thereafter. Alandia originally sought relief from the automatic stay to recover its aircraft. It claims as damages the pre-petition claim of GE of approximately $768,000 (the "GE Claim") which must be paid for Alandia to remain in the GE ECMP Program. However, the Debtor was not permitted

---

[13] Tr. 218:1-20.
[14] Tr. 151:1-15; 155:12-20; 156:14-25; 157:1-5
[15] Tr. 110:5-9.
[16] Tr. 111:12-25.
[17] Tr. 165:12-24.
[18] Tr. 170:3-7.

to pay the GE Claim absent confirmation of a plan in the chapter 11 case[19]. Thus, the GE Claim would have remained outstanding and the GE ECMP Program would have likely terminated regardless of when the leases were rejected had the GE Claim not been satisfied.

Additionally, the damages sought by Alandia for maintenance of the aircraft and repairs to component parts of the aircraft would have been incurred by Alandia regardless of the rejection of the leases or the few months use of the aircraft after the case was filed. The engine that CFM sent for maintenance was due for routine maintenance[20]. The maintenance charges would have been required for certain timed maintenance and inspections that are due and required for operation of an airplane and are all routine checks[21]. The alleged damages incurred by Alandia were not a result of the rejection of the leases and would have occurred regardless of the Agreed Order. These damages did not directly result from the failure of the Debtor to comply with all of the terms of the Agreed Order and would have been incurred regardless once the aircrafts were returned. Nothing in the Agreed Order indicates that it was intended to or, in fact, did transform pre-petition contractual obligations of the Debtor into administrative claims absent the actual assumption of the aircraft leases.

Finally, the Contempt Motion was filed *after* Debtor's counsel had already informed the Court and the parties, including Alandia, that the case needed to be converted to Chapter 7 as a result of the cessation of operations and lack of funds. Indeed the conversion order had already been entered and a trustee had been appointed prior to the hearing on the Contempt Motion. Thus, even if the Debtor had the means and funds to comply with the return conditions as argued by Alandia, Mr. Fayard was powerless to direct the Debtor to do so since only the Chapter 7 Trustee,

---

[19] Tr. 159:16-22.
[20] Tr. 182:18-22.
[21] Tr. 185:1-15.

not Mr. Fayard, could expend funds of the estate or otherwise direct the Debtor to take any action.

## Law and Argument

Mr. Fayard and his counsel treated the Contempt Motion filed by Alandia against him as a request for civil contempt sanctions whose primary purpose is to coerce a party to comply with a court order[22], not a criminal contempt action designed to punish the alleged contemnor[23]. In a civil contempt proceeding, the moving party must establish, by *clear and convincing evidence* that, (i) a court order be in effect, (ii) the order require certain conduct by the respondent, and (iii) that the respondent failed to comply with the order. *United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004), citing A*m. Airlines, Inc. v. Allied Pilots Ass'n,* 228 F.3d 574, 581 (5th Cir. 2000); see also *In re Bradley*, 588 F.3d at 264; see also *FDIC v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 195), citing *Martin v. Trinity Industries, Inc.,* 959 F.2d 45, 47 (5th Cir.1992); see also *In re Count Liberty, LLC*, 370 B.R. 259, 273 (Bankr. C.D. Cal. 2007); see also *In re Snider Farms, Inc.*, 125 B.R. at 993.

Alandia failed to produce any credible evidence, let alone the *clear and convincing evidence* required, that Mr. Fayard personally caused FlyGlo to fail to comply with the terms of

---

[22] *In re Snider Farms, Inc.*, 125 B.R. 993, 997 (Bankr. N.D. Ind. 1991) (Civil contempt orders serve either or both of two purposes: (i) to compel or coerce obedience to a court order; (2) to compensate the parties for losses resulting from the contemner's non-compliance with a court order), citing *United States v. United States Mine Workers of America,* 330 U.S. 258, 303-04, 67 S. Ct. 677, 91 L. Ed. 884 (1947); see also *Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254, 263 (5th Cir. 2009) (Civil contempt can serve two purposes, either coercing compliance with an order or compensating a party who has suffered unnecessary injuries or costs because of contemptuous conduct), citing *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961-62 (5th Cir. 1996).

[23] *In re Hipp, Inc.* 895 F.2D 1503, 1518 (5th Cir. 1990) ("[W]e now turn to consideration of the bankruptcy court's power to hear and determine criminal contempts. We conclude that the bankruptcy court lacks such power, at least as to contempts not committed in (or near) its presence, so that in the event of further prosecution of this offense, the hearing and determination must be before and by the district court. While our holding in this respect is one of statutory construction and we do not ultimately determine whether this result is constitutionally mandated, our conclusion is nevertheless influenced by the perception that the constitutionality of the contrary position is subject to substantial question. We follow the settled rule that federal statutes, where they may reasonably be so construed without violence to their clear meaning, should be given an interpretation that avoids serious question as to their constitutional validity"); see also *In re Skyport Glob. Communs.*, 661 F. App'x 835, 841 (5th Cir. 2016) (A bankruptcy judge has jurisdiction to impose civil sanctions, but not criminal sanctions); see also *In re Rodriguez*, 2007 U.S. Dist. LEXIS 11858 (W.D. Tex. Feb. 20, 2007).

the Agreed Order. To the contrary, Mr. Fayard had 3 million reasons to hope the Debtor would comply with the terms of the Agreed Order and continue in its business operations as he had personally invested approximately $3 million dollars in the Debtor[24].

The Agreed Order required certain conduct by the Debtor, but not by Mr. Fayard personally. Alandia has produced no evidence demonstrating that Mr. Fayard personally sought non-compliance from the Debtor or took any action to prevent the Debtor from meeting its obligations under the Agreed Order. Mr. Fayard had no control over the failure of CFM to staff the aircrafts with the requisite personnel to ensure a full-time flight schedule. The obligations in the Agreed Order did not direct or require Mr. Fayard to personally take any action. The terms of the Agreed Order were the responsibility of the Debtor and Alandia provided no evidence that Mr Fayard in any way interfered with or otherwise hampered the Debtor's efforts to comply with the Agreed Order. On the contrary, the evidence clearly showed that Mr. Fayard did all that he reasonably could under the circumstances to have the Debtor comply with the Agreed Order and that it in fact did so less only complying with the return conditions… an obligation that was impossible to perform due to a lack of funds.

If Alandia wanted to require Mr. Fayard to personally ensure that the obligations of the Debtor under its lease agreements were met, it should have required Mr. Fayard to personally guarantee those obligations under the lease agreements. Trying now to hold Mr. Fayard personally responsible for the losses it claims to have suffered through the guise of a contempt proceeding against him is nothing more than an attempt to have Mr. Fayard personally guaranty the Debtor's obligations after the fact.

---

[24] Tr. 149:3-18.

Alternatively, even if this Court were to find that Mr. Fayard had a personal obligation to ensure the Debtor performed under the terms of the Agreed Order, circumstances beyond the control of Mr. Fayard made compliance by the Debtor impossible. Contempt is not proper when compliance is prevented and is a defense to a finding of civil contempt. *Count Liberty*, 370 B.R. at 274; citing *United States v. Rylander*, 460 U.S. 752, 757 (1983) ("Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action."); see also *SEC v. Allen*, 2014 U.S. Dist. LEXIS 3117, *8 (N.D. Tex. Jan. 10, 2014) ("A defendant may also assert a present inability to comply with the order as a defense to civil contempt"); see also *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999) ("A party's inability to comply with a judicial order constitutes a defense to a charge of civil contempt"); see also *U.S. v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1998) ("…in this circuit, a party subject to a court's order demonstrates inability to comply only by showing that he has made "in good faith all reasonable efforts to comply"); citing *United States v. Rizzo,* 539 F.2d 458, 465 (5th Cir. 1976). Mr. Fayard has shown he made a good faith effort to comply with all terms of the Agreed Order and should not be held in civil contempt as circumstances outside of his control led to the inability of the Debtor to continue operations and thus have a source of revenue sufficient to comply with the terms of the Agreed Order. Furthermore, since Mr. Fayard has no power to direct the Debtor to take any action nor expend any funds since the case has been converted, there is simply no basis for a civil contempt action to go forward. *United States v. Rylander*, supra.

The failure of CFM to provide a full flight schedule led to the eventual cessation of business operations. Obviously, the reduction in flight schedules due to CFM's refusal or inability to adequately staff the aircraft led to a substantial reduction in revenue and the ultimate cessation of

the Debtor's business. The ability of the Debtor to comply with the terms of the Agreed Order at that point were unattainable.

Further emphasizing the impossibility of compliance, no additional financing was available to the Debtor. Upon the cessation of revenue-generating flights and the notification to counsel for Wyoming Aviation Group, LLC (the "DIP Lender") that the case would require conversion, the DIP Lender refused to extend any additional funds to the Debtor with the exception of the final payroll owed to the remaining employees. As counsel for the Debtor testified, the advance of the payroll was a minimal $12,500 after more than $500,000 had previously been advanced[25]. The DIP Lender knew it wouldn't get that back. During the wind down, the Debtor wanted to ensure the unpaid employees were paid[26].

In addition, the Debtor was actively seeking funding from investors even after CFM had notified the Debtor of the reduced flight schedule, but the reduced number of planes and flight cancellations made additional investments into the company difficult[27].

The cases cited by Alandia purporting to support a finding of civil contempt are clearly distinguishable from the facts of this case and the testimony presented at the hearing on the Contempt Motion. In *Snider Farms*, the chief executive officer of the debtor entity was *personally* instructed at a status conference as to what to do with certain proceeds from a sale of estate property. *Snider Farms*, 125 B.R. at 998 ("…the Respondent was fully apprised by express verbal instruction at the status conference held on August 4, 1990 as what to do with the crop proceeds in question"). The failure to do as he was instructed was an intentional act in defiance of the order issued by the court and the court found the respondent in civil contempt for knowingly violating

---

[25] Tr. 240:14-22.
[26] Tr. 227:18-24.
[27] Tr. 220:16-24.

the orders issued by the court. *Id.* Contrastingly, Mr. Fayard was not even present at the hearing concerning the Agreed Order, was not a party to it personally, and did not participate in the negotiations regarding its terms.

Similarly, in *In re Bradley*, there was an injunction in place specifically directed to the trustee personally. *Bradley*, 588 F.3d at 264. Here, the Agreed Order was signed by Mr. Fayard as a manager of the Debtor, not personally.

Finally, in those cases in which the Court has found a non-party in civil contempt for the conduct of a corporation, the non-party has been an owner of that entity, or "one in the same." *Spectacular Venture, L.P. v. World Star Int'l, Inc.*, 927 F. Supp. 683, 685 (S.D.N.Y. 1996) (the principal/president of the company was found in contempt after Court noted the principal/president and company were "one in the same"); see also *Amerisource Corp. v. RX USA Int'l, Inc.*, 2010 WL 2730748 (E.D. N.Y. 2010) (the principal was also the majority shareholder of the corporation); see also *Luc Vets Diamant v. GMS Diamonds Corp,*, 2004 WL 2710028 (S.D.N.Y. 2004) (the principal was the sole shareholder). Here, Mr. Fayard was the chief executive officer of the Debtor entity but had only an indirect minority ownership of the Debtor[28].

## Conclusion

Alandia has failed to prove by clear and convincing evidence that Mr. Fayard was personally subject to the Agreed Order, or that he personally acted in willful defiance of the Agreed Order, or that his conduct was in any way contemptuous. In fact, Mr. Fayard testified that it was his intent for the Debtor to comply with the terms of the Agreed Order, but that it became impossible to do so when operations ceased[29]. Mr. Fayard, as CEO of the Debtor, made every effort to satisfy the terms of the Agreed Order when the aircrafts were returned. Once the Debtor

---

[28] Tr. 101:24-25; 102:19-24.
[29] Tr. 108:3-5

11

ceased its operations and additional financing was no longer available, there was no revenue stream or loan proceeds with which the Debtor could continue to make payments to Alandia or pay to make repairs or other expenses associated with the return of the leased aircrafts. Furthermore, once the case was converted to Chapter 7, Mr. Fayard became powerless to implement compliance with the return conditions in the Agreed Order even if funds were available to the Debtor to do so. Based on these facts, Mr. Fayard cannot be held personally responsible or liable for the failure of the Debtor to reorganize or otherwise have successful operations that would have resulted in the Debtor having the ability to pay the expenses associated with the Agreed Order and terms of the leases. Further, Mr. Fayard had every reason to see the Debtor succeed as he had invested a considerable sum in the Debtor's business operations. There was no evidence offered to suggest that Mr. Fayard personally took any action – or failed to take action- to intentionally not comply with the terms of the Agreed Order; it simply became impossible for the Debtor to do so.

**WHEREFORE**, Calvin C. Fayard, III respectfully requests that this Court enter an order denying the *Motion and Incorporated Memorandum for Order Under 11 U.S.C. §105(A) Holding Debtor and its Principal in Contempt and Under 11 U.S.C. §503 for Allowance of Administrative Expense Claim* [Doc. 158], and for any and all other relief this Court deems necessary and proper, including fees and costs associated with the defense of this Motion.

Respectfully submitted by:

/s/ William E. Steffes
William E. Steffes, #12426
Noel Steffes Melancon, #30072
**STEFFES, VINGIELLO, MCKENZIE, LLC**
13702 Coursey Boulevard Building 3
Baton Rouge, LA 70817
Telephone: (225) 751-1751
Facsimile: (225) 751-1998
Email: bsteffes@steffeslaw.com

*Counsel for Mr. Calvin C. Fayard, III*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: | CASE NO. 17-11015 |
| FLYGLO, LLC | CHAPTER 7 |
| DEBTOR | SECTION B |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Post-Trial Memorandum has been served upon all parties entitled to receive electronic notification via this Court's CM/ECF Electronic Notification System, as shown below:

David V. Adler - adler_d@bellsouth.net, LA26@ecfcbis.com
Richard A. Aguilar - raguilar@mcglinchey.com, aparnell@mcglinchey.com
Lance J. Arnold - arnold@bhbmlaw.com, dbroderson@bhbmlaw.com;rchauvin@bhbmlaw.com
Brent B. Barriere - bbarriere@fishmanhaygood.com, jburge@fishmanhaygood.com; kjohnson@fishmanhaygood.com
Greta M. Brouphy - gbrouphy@hellerdraper.com, kfritscher@hellerdraper.com; lwright@hellerdraper.com
Elwood F. Cahill, Jr. - ecahill@shergarner.com, rluminais@shergarner.com
Mark J. Chaney, III - mchaney@mcglinchey.com, aparnell@mcglinchey.com
Leslie A. Collins - lcollins@hellerdraper.com
Leo D. Congeni - leo@congenilawfirm.com, michelle@congenilawfirm.com
Douglas S. Draper - dsd@hellerdraper.com, lcollins@hellerdraper.com;kfritscher@hellerdraper.com
Amanda Burnette George - amanda.b.george@usdoj.gov
Andrea Horowitz Handel - andrea.handel@usdoj.gov
Bradley C. Knapp - bknapp@lockelord.com, kelly.millet@lockelord.com
Loretta G. Mince - lmince@fishmanhaygood.com, cmayer@fishmanhaygood.com
Mark Mintz - mmintz@joneswalker.com, hstewart@joneswalker.com
Peter James Segrist - segrist@carverdarden.com, foy@carverdarden.com
Ron Christopher Stamps - bankruptcy@rcstampslaw.com
Office of the U.S. Trustee - USTPRegion05.NR.ECF@usdoj.gov
R. Patrick Vance - pvance@joneswalker.com, nwiebelt@joneswalker.com
David F. Waguespack - waguespack@carverdarden.com, docket@carverdarden.com; plaisance@carverdarden.com

and upon the Unsecured Creditors Committee, by depositing a copy of same in the United States Mail, postage prepaid and properly addressed, as shown below:

| | | |
|---|---|---|
| Aviation Inventory Resources, Inc.<br>Attn: Morgan Whitehead<br>12240 E. FM Highway 917<br>Alvarado, TX 76009 | Worldwide Aircraft Services, Inc.<br>Attn: David Vorbeck<br>2755 N. General Aviation Ave.<br>Springfield, MO 65803 | Worldwide Aircraft Services, Inc.<br>Attn: Christiaan Horton<br>2805 S. Ingram Mill Road<br>Springfield, MO 65804 |
| Empire Airlines, Inc.<br>Attn: Scott Marikis<br>11559 North Atlas Road<br>Hayden, ID 83835 | Empire Airlines, Inc.<br>Attn: Joseph Covey, Esq.<br>Parr Brown Gee & Loveless<br>101 South 200 East, Suite 700<br>Salt Lake City, UT 84111 | |

Baton Rouge, Louisiana, November 29, 2017.

/s/ William E. Steffes
William E. Steffes